UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

INSTALLER TECHNOLOGY CO., a Florida corporation,

    Plaintiff,

v.

ADVERTISING TECHNOLOGIES LTD. d/b/a PROPELLER ADS MEDIA, a foreign limited company, and FASTLINK SUPPLIES LP, a foreign limited partnership,

    Defendants.

CASE NO. 1:15-cv-24738-UU

**FIRST AMENDED COMPLAINT**

Plaintiff, INSTALLER TECHNOLOGY CO. ("ITC"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 15(a)(1)(A) and Local Rule 15.1, sues and files this First Amended Complaint[1] against the Defendants, ADVERTISING TECHNOLOGIES LTD d/b/a PROPELLER ADS MEDIA ("Propeller Ads") and FASTLINK SUPPLIES LP ("Fastlink") and alleges as follows:

**INTRODUCTION**

1.    At its core, this is an action to recover damages incurred because of the fraudulent activity of the Defendants. The Plaintiff purchased online advertising space from the Defendants, which were compensated based on the number of people who viewed an advertisement. The

---

[1] This First Amended Complaint addresses the jurisdictional concerns raised *sua sponte* by the Court in its Order to Show Cause [D.E. 6], and is otherwise substantially identical to the original pleading. ITC is also filing a formal response to the Order to Show Cause.

Defendants fraudulently manipulated the number of views using, *inter alia*, "bots" designed to inflate the number of advertisement views, thereby improperly increasing their bill.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based upon the complete diversity of the citizenship of the parties.

3. The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000.00, exclusive of interest, costs, and attorneys' fees. At this time, there is at least $263,112.99 in billing that is disputed as between the Plaintiff and the Defendants.

4. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the actions giving rise to this Complaint took place within this district.

5. This Court has personal jurisdiction over the Defendants pursuant to § 48.193, Fla. Stat., because the actions giving rise to this Complaint took place within the State of Florida. Although neither Defendant is a resident of the United States, much less Florida, "where a defendant's tortuous conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007).

6. All conditions precedent to the filing of this action have occurred or have been complied with.

## PARTIES

7. At all times material to this action, Plaintiff ITC was a Florida corporation with its principal place of business in Miami Beach. Plaintiff ITC is and was a citizen of Florida.

8. Propeller Ads is and was a corporation organized under the laws of the British Virgin Islands, an Overseas Territory of the United Kingdom. Propeller Ads' principal place of business is

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

in the British Virgin Islands. Private limited companies are treated as corporations for purposes of jurisdictional analysis. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 582-83 (7th Cir. 2003); *SHLD, LLC v. Hall*, No. 15 Civ. 6225(LLS), 2015 WL 5772261, at *2 (S.D.N.Y. Sep. 29, 2015). Propeller Ads' principal place of business is in the British Virgin Islands. Thus, Propeller Ads is and was a citizen of the United Kingdom. *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 100 (2002) (holding that "the United Kingdom's retention and exercise of authority over the BVI renders BVI citizens, both natural and juridic, 'citizens or subjects' of the United Kingdom under 28 U.S.C. § 1332(a)"). In the alternative Propeller Ads is and was a corporation organized under the laws of the UK with its principal place of business in London. In either case, Propeller Ads is and was a citizen of the United Kingdom.

9. Defendant Fastlink is and was a limited partnership formed in the United Kingdom. Fastlink's principal place of business is in South Lanarkshire, Scotland.

10. A limited partnership is a citizen of each State or Foreign state of which any of its partners—whether general or limited—are citizens. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)).

11. Fastlink has one general partner and one limited partner.

1. Fastlink's general partner is Total Admin Ltd. Total Admin Ltd. is and was a corporation organized under the laws of New Zealand, with its principal place of business in New Zealand. Total Admin Ltd. is and was a citizen of New Zealand.

12. ITC has also identified a corporation by the name of Total Admin Ltd. that is organized under the laws of the United Kingdom, with its principal place of business in Stoke-On-

- 3 -

Fowler White Burnett P.A. • One Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394• (954) 377-8100

Trent, England. If this Total Admin Ltd. is the proper general partner, then Total Admin Ltd. is and was a citizen of the United Kingdom.

13. Irrespective of which Total Admin Ltd. is the proper general partner, neither of them is a citizen of Florida.

14. Fastlink's limited partner is Super Admin Ltd. Super Admin Ltd. is a corporation organized under the laws of the United Kingdom, with its principal place of business in London, England. Super Admin Ltd. is and was a citizen of the United Kingdom.

15. Therefore, Fastlink is either a citizen of solely the United Kingdom or a citizen of the United Kingdom and New Zealand. Either way, it is not a citizen of Florida. Thus, there is complete diversity between the plaintiff and the defendants.

## FACTUAL ALLEGATIONS

### Background

16. ITC contracted with Propeller Ads in June 2013 to purchase online advertising. These advertising campaigns were compensated based on the number of consumers who viewed the advertisement. This is known as "CPM", or "cost per mille", advertising. Thus, a CPM of $5.00 would represent 1,000 people viewing an ad at $0.005 per view. The vast majority of the advertising which was bought from Propeller Ads was sold via this method.

17. Another method of selling advertising is "CPA" or "cost per action". ITC purchased a small portion of CPA advertising from Propeller Ads. The "action" in this case was a download of ITC's software.

18. Propeller Ads sells advertising on a bidding based system, in which the highest dollar value bid per website visitor receives the first view for any given visitor per day, per site. This is

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

important as a user who has viewed multiple ads in a single day is less valuable due to being inundated with advertisements.

19. For example, paying $5 for "top bid" could have a gross return of $5.50, whereas paying $5.00 for "second position" could result in a gross return of $3.00, causing a loss.

20. Beginning in the spring of 2015, Propeller Ads refused to share information regarding other bids, causing a substantial degradation in performance.

21. ITC purchased this advertising from the Defendants for software products that are further monetized by user actions such as accepting a third-party offer; based on revenue sharing where the user purchases additional software or support from the installed application; or from advertising within the application itself.

22. ITC's goal, as with any advertising, was to purchase advertising at a cost below gross revenue to have a profit margin.

23. Due to the complexity of internet advertising and of monetization taking place several months after the user installs the software, fraud is not easily detected in the short-term.

**Specific Allegations of Wrongdoing**

24. ITC initially contracted with Propeller Ads in June of 2013 for a small test campaign of $2,100.00.

25. This contract was payable to "Glory Promotions LP" of Scotland, with its bank located in Latvia.

26. This was the first of many payee changes requested by Propeller Ads over the period of the campaign, as their recipient banks refused and returned wires sent to them.

27. This campaign was a loss and no further advertising was purchased until another test in September of 2014.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

28. A new single page contract was signed on September 9, 2014, with payee instructions reverting back to Advertising Technologies Ltd., i.e., Propeller Ads. Its bank was listed as "As Latvijas Pasta Banka", which is located in Latvia. A copy of the contract is attached heretofore as **Exhibit "A"**.

29. During the September 2014-September 2015 advertising period, ITC paid Propeller Ads approximately $697,000.00.

30. ITC paid Propeller Ads via wire transfers from another entity.

31. On September 16, 2014, Propeller Ads was informed that their billing counts were inflated by 31% on invoicing and needed to be corrected.

32. This issue was not resolved or further investigated until the September 2015 campaign review.

33. Between May and September of 2015, there were repeated issues with the product delivered from Propeller Ads, including low volume, low user quality, higher than allowable pricing, and refusal of Propeller Ads to provide accurate pricing breakdown.

34. Since Propeller Ads controls all aspects of the campaign and ITC could not even see what it was "paying" regarding CPM in any report or online interface, ITC wholly relied on Propeller Ads to provide campaign management resources and adjust bids accordingly.

35. Propeller Ads did not provide these management resources or adjust bids, thereby causing a considerable *de*crease in performance and a considerable *in*crease in user acquisition costs.

36. These issues came to a head on or around September 30, 2015, when after making several requests to change campaign settings that were not honored, and after incurring further losses, ITC stopped the campaign.

- 6 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

37. After several unproductive conversations, a deep campaign review was performed, in which ITC discovered "click fraud" by Propeller Ads.

38. Propeller Ads had been providing traffic from sources that are not valid consumers, and are in fact computer systems designed to defraud ITC by inflating the billable count.

39. These systems are computers, where the IP address is registered to data centers, server providers, and cloud hosts such as Amazon EC2 or Microsoft Azure.

40. There is no other explanation for this activity other than fraud, and activity from these sources accounts for more than 20% of the provided traffic for which ITC was billed.

41. Propeller Ads also placed advertisements on file sharing websites (such as The Pirate Bay) and illegal television streaming sites.

42. The placement of these ads was not disclosed to ITC, as Propeller Ads provides only a numerical ID for the site and refuses to disclose the website name or URL.

43. ITC only discovered the identity of the websites when reviewing user data logs during the course of the deep campaign review, in which it saw a high correlation of illegal content websites. ITC then visited these sites to verify that the ad network matched the numerical ID that was being provided by Propeller Ads. The IDs matched.

44. Placement of advertisements on illegal file sharing websites causes brand harm and attracts the wrong type of user.

45. Google has taken a strong stance against malware. Some of Propeller Ads' other clients' products have been classified as malware.

46. Propeller Ads' practice of dealing with unscrupulous clients resulted in an escalation process from Google, in which Google first would block the offending advertisement's website.

- 7 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

47. The next step for Google would be to block Propeller Ads and any advertisement shown by Propeller Ads.

48. On multiple occasions, Propeller Ads has been blocked by Google. During these periods, ITC was still charged for views, even though users using Google Chrome as a browser would not see ITC's advertisements.

49. Because nearly 50% of all browser traffic comes from Google Chrome, this arrangement results in a substantial overcharge to ITC. ITC receives no revenue, despite being charged for views.

50. Propeller Ads' invoices are not itemized other than a dollar value per day.

51. Because Propeller Ads sells advertising based on CPM and CPA, ITC has repeatedly requested an itemized invoice of each numerical ID, a count of billable events, and a rate per CPM delivered by day so that ITC can demonstrate that its reporting does not show counts consistent with Propeller Ads'.

52. ITC's internal counts indicate billable counts of about 70% of the numbers provided by Propeller Ads.

53. Propeller Ads has refused to provide this detailed invoicing, without which prior invoices are merely an arbitrary number without justification.

### **COUNT I – COMMON LAW FRAUD (ALL DEFENDANTS)**

54. Plaintiff hereby incorporates by reference and restates paragraphs 1-53 as if fully stated herein.

55. The Defendants provided the Plaintiff with false information regarding the process by which the Plaintiff would be billed for the advertising. Specifically, the Defendants represented that

- 8 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CPM would be calculated only by "actual" views, not views manufactured by botnets and other systems that are not real people.

56. At all times relevant to this action, the Defendants knew that the representations it was making to the Plaintiff were false, based on its refusal to share the itemized breakdown of the advertising numbers. Had they shared this information, it would have been immediately clear that the Defendants were fraudulently billing.

57. The Defendants intended that their statements regarding their billing practices would induce the Plaintiff to contract with the Defendants for online advertising.

58. The Plaintiff relied on the false information from the Defendants regarding the billing process to their detriment by deciding to use the Defendants for their advertising campaign and consequently were damaged by the Defendants' fraudulent practices.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for compensatory damages, post-judgment interest, costs, and attorneys' fees, and all other relief the Court deems just and proper.

**COUNT II – FRAUDULENT MISREPRESENTATION (ALL DEFENDANTS)**

59. Plaintiff hereby incorporates by reference and restates paragraphs 1-53 as if fully stated herein.

60. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

61. The Defendants provided the Plaintiff with false information regarding the process by which the Plaintiff would be billed for the advertising. Specifically, the Defendants represented that CPM would be calculated only by "actual" views, not views manufactured by botnets and other systems that are not real people.

- 9 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

62. At all times relevant to this action, the Defendants knew that the representations it was making to the Plaintiff were false, based on its refusal to share the itemized breakdown of the advertising numbers. Had they shared this information, it would have been immediately clear that the Defendants were fraudulently billing.

63. The Defendants intended that their statements regarding their billing practices would induce the Plaintiff to contract with the Defendants for online advertising.

64. The Plaintiff relied on the false information from the Defendants regarding the billing process to their detriment by deciding to use the Defendants for their advertising campaign and consequently were damaged by the Defendants' fraudulent practices.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for compensatory damages, post-judgment interest, costs, and attorneys' fees, and all other relief the Court deems just and proper.

**COUNT III – NEGLIGENT MISREPRESENTATION (ALL DEFENDANTS)**

65. Plaintiff hereby incorporates by reference and restates paragraphs 1-53 as if fully stated herein.

66. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

67. The Defendants provided the Plaintiff with false information regarding the process by which the Plaintiff would be billed for the advertising. Specifically, the Defendants represented that CPM would be calculated only by "actual" views, not views manufactured by botnets and other systems that are not real people.

68. At all times relevant to this action, the Defendants knew or should have reasonably known that the representations it was making to the Plaintiff were false.

- 10 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

69.     The Defendants intended that their statements regarding their billing practices would induce the Plaintiff to contract with the Defendants for online advertising.

70.     The Plaintiff justifiably relied on the false information from the Defendants regarding the billing process to their detriment by deciding to use the Defendants for their advertising campaign and consequently were damaged by the Defendants' practices.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for compensatory damages, post-judgment interest, costs, and attorneys' fees, and all other relief the Court deems just and proper.

### COUNT IV – BREACH OF CONTRACT (PROPELLER ADS)

71.     Plaintiff hereby incorporates by reference and restates paragraphs 1-53 as if fully stated herein.

72.     A written contract exists between ITC and Propeller Ads, which has been attached as an exhibit to this Complaint.

73.     Propeller Ads has breached the contract by inflating the number of billable events as described in the allegations above, thereby causing damage to the Plaintiff.

74.     The Plaintiff has been directly and proximately damages by these continued breaches.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for compensatory damages, post-judgment interest, costs, and attorneys' fees, and all other relief the Court deems just and proper.

### COUNT V – UNJUST ENRICHMENT (ALL DEFENDANTS)

75.     Plaintiff hereby incorporates by reference and restates paragraphs 1-53 as if fully stated herein.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

76. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

77. Because the Plaintiff made some payments to Propeller Ads and others to Fastlink, both Defendants may have been unjustly enriched. This is in contrast to Count IV above, where only ITC and Propeller Ads were in privity of contract.

78. Defendants knowingly accepted money for advertising from ITC which in justice and equity it should not be permitted to keep. More than 20% of the invoice billed to ITC was generated by page views and actions that were not made by "real people", but rather by sophisticated computer systems.

79. ITC has paid these invoices.

80. Thus, the Plaintiff conferred benefits on the Defendants, which Defendants voluntarily accepted, under circumstances in which it would be inequitable for the Defendants to retain such benefit.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for compensatory damages, post-judgment interest, costs, and attorneys' fees, and all other relief the Court deems just and proper.

**COUNT VI – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (ALL DEFENDANTS)**

81. Plaintiff hereby incorporates by reference and restates paragraphs 1-53 as if fully stated herein.

82. Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, *et seq.*, Fla. Stat., prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

- 12 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

83. The stated purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

84. The Defendants' practices, wherein they induce customers to purchase online advertising and subsequently grossly overbill the customer by artificially manufacturing the number of billable events, is patently unfair and run contrary to the FDUTPA's stated goal of protecting legitimate business enterprises from those who engage in unconscionable and deceptive practices.

85. The Defendants' unfair business practices proximately caused actual damages to the Plaintiff by way of having made payments far in excess of what was actually owed.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for compensatory damages, post-judgment interest, costs, and attorneys' fees, and all other relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2016, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

- 13 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

s/ Avery A. Dial
Avery A. Dial

Respectfully submitted,

/s/ Avery A. Dial
Avery A. Dial
Fla. Bar No. 732036
Email: adial@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:   (954) 377-8101

- 14 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. 1:15-cv-24738-UU

- 15 -

## SERVICE LIST

CASE NO. 1:15-cv-24738-UU

Val Gurvits, Esq.
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
E-Mail: vgurvits@bostonlawgroup.com
Telephone: (617) 928-1800
*Attorney for Propeller Ads and Fastlink*

4823-1832-3756, v. 1