**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:15-cv-24738-UU

INSTALLER TECHNOLOGY, CO.,

     Plaintiff,

v.

ADVERTISING TECHNOLOGIES LTD., *et al.*,

     Defendants.

_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff/Counter-Defendant/Third-Party Defendants' Motion to Dismiss Counts II, III, IV, and V of Counterclaim and to Dismiss Christopher Miseresky from the Lawsuit Entirely.  D.E. 33.

THE COURT has considered the Motion, the pertinent portions of the record and is otherwise fully advised in the premises.

## FACTUAL ALLEGATIONS

The following facts are taken from Defendants/Counter-Plaintiffs' Counterclaim and Third-Party Complaint.  D.E. 28.  Third-Party Defendant, Christopher Miseresky ("Miseresky"), is the Chief Executive Officer and sole shareholder of Third-Party Defendant, Netnucleus, Inc. ("Netnucleus").  *Id.* ¶ 7.  Miseresky was the sole director and shareholder of Counter-Defendant, Installer Technology Co. ("ITC"), which dissolved on September 25, 2015.  *Id.* ¶¶ 8, 27.  Netnucleus is ITC's successor-in-interest, conducts the same business as ITC, and has many of the same customers and clients as ITC.  *Id.* ¶ 28.

In September 2014, Miseresky entered into a binding agreement on behalf of ITC with Counter-Plaintiff, Advertising Technologies Ltd. d/b/a Propeller Ads Media ("Propeller"), whereby Propeller agreed to place advertisements for ITC on the internet. *Id.* ¶ 9.  Based upon the terms of the agreement, ITC was required to compensate Propeller for the advertisement services. *Id.* ¶ 11; D.E. 28-1.  In accordance with the terms of the agreement, Propeller was required to invoice ITC on a weekly basis, and ITC was required to pay these invoices within seven (7) days. *Id.* ¶ 15.

In November 2014, ITC regularly began to delay payments on issued invoices until they were overdue by more than forty-five (45) days. *Id.* ¶ 16.  By March 2015, ITC was paying invoices sixty (60) days late. *Id.* ¶ 17.  Prior to June 2015, on at least three occasions, ITC entirely failed to make payment on the issued invoices. *Id.* ¶¶ 19-21.  Propeller made multiple requests for ITC to make payment on the invoices, and Miseresky informed Propeller that the payments were either forthcoming or the payments were already made. *Id.* ¶ 22.  Because Propeller believed that the payments were forthcoming, Propeller continued to provide advertising services to ITC. *Id.* ¶ 23.  Miseresky never sent the payments, and he continued to claim that the payments were "lost." *Id.* ¶ 24.

On June 8, 2015, Counter-Plaintiff, Fastlink Supplies LP ("Fastlink"), assumed the invoicing operations for Propeller and issued an invoice to ITC. *Id.* ¶ 30.  The invoice was partially paid on August 11, 2015 and September 1, 2015; however, to date, no further payments have been made by Propeller despite other invoices having been issued. *Id.* ¶¶ 30-33.  Over many months, Miseresky repeatedly informed Propeller and Fastlink that payments were forthcoming, and based upon this, Propeller continued to provide services to Miseresky and his

companies. *Id.* ¶¶ 33-34.  To date, ITC, Netnucleus, and Miseresky owe $263,112.99 for the services provided by Propeller. *Id.* ¶ 37.

On April 19, 2016, Counter-Plaintiffs, Propeller and Fastlink, filed this Counterclaim against ITC and the Third-Party Complaint against Miseresky and Netnucleus, alleging the following claims: (1) Breach of Contract against ITC; (2) Unjust Enrichment against all Counter-Defendants; (3) Quantum Meruit against all Counter-Defendants; (4) Fraudulent/Intentional Misrepresentation against all Counter-Defendants; and (5) Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against all Counter-Defendants.  D.E. 28.[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has stated that a plaintiff must submit "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In considering a motion to dismiss for failure to state a cause of action, the "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678)).  "Where a complaint pleads

---

[1] Although not addressed by Counter-Defendant/Third-Party Defendants in their Motion to Dismiss, the Court wishes to acknowledge the sloppy way in which this Counterclaim/Third-Party Complaint was drafted. For example, it is abundantly clear that Counter-Plaintiffs did not take the time to carefully review their pleading prior to filing because every claim is pleaded against "all Counter-Defendants," notwithstanding the fact that there is <u>one</u> Counter-Defendant and <u>two</u> Third-Party Defendants.

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).  Although "[a] plaintiff need not plead 'detailed factual allegations[,] . . . a formulaic recitation of the elements of a cause of action will not do,'" and the plaintiff must offer in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson*, 744 F.3d at 708 (quoting *Twombly*, 550 U.S. at 555)).

## <u>ANALYSIS</u>

In their Motion to Dismiss, Plaintiff/Counter-Defendant/Third-Party Defendants move to dismiss Counts II, III, IV, and V of Counterclaim and to entirely dismiss Third-Party Defendant, Christopher Miseresky, from the lawsuit.[2]  The Court considers each argument in turn.

### 1.    <u>Counts II and III</u>: Equitable Claims for Relief

Counter-Defendant/Third-Party Defendants move to dismiss Counts II and III because, as pleaded, the equitable claims for unjust enrichment and quantum meruit are precluded by the allegations pertaining to the existence of an express contract entered into between the parties. Counter-Defendant/Third-Party Defendants argue that in Counts II and III, Counter-Plaintiffs have incorporated the allegations set forth in paragraphs 1 through 43, and in those paragraphs, Counter-Plaintiffs describe the existence of an express contract and actually attach the referenced contract entered into between Propeller and ITC as an exhibit.   D.E. 28 ¶¶ 9-13. Counter-Defendant/Third-Party Defendants argue that the counts are "internally repugnant," and therefore, Counter-Plaintiffs cannot bring alternative equitable claims for relief.

Under Florida law, "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Martorella v. Deutsche Bank*

---

[2] While the Counter-Plaintiffs have not yet filed their Response to Counter-Defendant/Third-Party Defendants' Motion to Dismiss, the Court finds that it is unnecessary to wait for such a response in light of the deficient manner in which the claims were pleaded.

*Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013) (citing *Diamond "S" Dev. Corp. v. Merchantile Bank*, 989 So. 2d 969, 697 (Fla. Dist. Ct. App. 2008)).  While it is true that "a party may plead in the alternative for relief under an express contract and for unjust enrichment," *Martorella*, 931 F.2d at 1227, "unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid."  *Id.* (citing *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002)); *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1369 (S.D. Fla. 2007) (finding "a quasi-contractual claim fails upon a showing that an express contract exists"); *Ocean Communications, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007) ("Defendants correctly state that a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists.").

In their Counterclaim/Third-Party Complaint, Counter-Plaintiffs allege the existence of an express contract in paragraphs 9 through 12.  D.E. 28 ¶¶ 9-12.  In Counts II and III – the unjust enrichment and quantum meruit claims, respectively – the Counter-Plaintiffs expressly "repeat, re-allege and incorporate" the allegations of paragraphs 1 through 38, which apparently include the allegations pertaining to the existence of an express contract.  *Id.* ¶¶ 45, 48. Therefore, Counter-Defendant/Third-Party Defendants are correct in their argument that Counter-Plaintiffs have improperly pleaded legally repugnant theories, despite the fact that it appears Counter-Plaintiffs attempted to plead these claims in the alternative.  While Counter-Plaintiffs are permitted to plead in the alternative, there must be a dispute as to the existence of an express contract.  Counter-Plaintiffs failed to assert any such allegation.  For these reasons, the Court finds it appropriate to grant Counter-Defendant/Third-Party Defendants' Motion to Dismiss as to Counts II and III; however, assuming such facts exist and assuming there is a

good-faith basis to allege such a dispute, Counter-Plaintiffs will be granted leave to amend to correct these deficiencies in order to attempt to properly plead alternative forms of relief under Florida law.

2.   <u>Counts IV and V</u>: Fraudulent Misrepresentation and Florida Deceptive and Unfair Trade Practices Act

In their Motion to Dismiss, Counter-Defendant/Third-Party Defendants move to dismiss Counts IV and V of the Counterclaim/Third-Party Complaint on the grounds that Counter-Plaintiffs are basing its fraud claims upon future acts, and there is no recognizable fraud under Florida law for future actions.

Under Florida law, the elements for fraudulent misrepresentation are: (1) a false statement concerning a material fact, (2) the representor's knowledge that the representation is false, (3) an intention that the representation induces another to act on it, and (4) consequent injury by the party acting in reliance upon the representation. *See Patterson v. Downtown Med. & Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 n.2 (M.D. Fla. 1994) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. App. 1985)).   "A false statement amounting to a promise to do something in the future is not actionable fraud, even though the representation was made to induce another to enter into a transaction." *Royal Typewriter Co., a Div. of Litton Business Sys., Inc. v. Zerographic Supplies Corp.*, 719 F.2d 1092, 1104 (11th Cir. 1983).   "A plaintiff seeking to recover for such a misrepresentation must show that the promisor either lacked the intention to perform the promise or specifically intended not to perform at the time the representation was made." *Id.* (citing *Bernard Marko & Assocs., Inc. v. Steele*, 230 So. 2d 42 (Fla. App. 1970)).

To sufficiently plead a claim under FDUTPA, a party must allege the following: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *See Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012)

(citing *Feheley v. Lai Games Sales, Inc.*, No. 08-23060-civ, 2009 WL 2474061, at *5 (S.D. Fla. 2009)).  A "deceptive act or unfair practice" may be found when "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Blair*, No. 5:11-cv-566-Oc-37TBS, at *3 (citing *Sundance Apts I., Inc. v. Gen. Elec. Cap. Corp.*, 581 F. Supp. 2d 1215, 1220 (S.D. Fla. Sept. 23, 2011)).  "Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)."  *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002).

In reviewing the Counterclaim/Third-Party Complaint, the Court does not agree with the Counter-Defendant/Third-Party Defendants' argument that the fraudulent misrepresentation claim is based upon a future promise.  It is clear in the Counterclaim/Third-Party Complaint, Counter-Plaintiffs allege that Miseresky, in the past, told Counter-Plaintiffs that the payment was forthcoming; however, no payment was made.  D.E. 28 ¶¶ 22, 25, 33.  Therefore, the Court does not take issue with the way in which the Counter-Plaintiffs have alleged the alleged misrepresentations; however, the Court finds that Counter-Plaintiffs have failed to meet the heightened pleading standard required under Federal Rule of Civil Procedure 9(b).  Specifically, Counter-Plaintiffs have failed to allege the precise time and place of the statement(s), the content and manner in which the statements misled the Counter-Plaintiffs, and what the Counter-Defendant/Third-Party Defendants obtained by the alleged fraud.  *See* Fed. R. Civ. P. 9(b); *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81, 86 (11th Cir. 2008); *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  Because the Court finds that Counter-Plaintiffs have not pleaded its fraudulent misrepresentation claim with

the requisite specificity, Counter-Defendant/Third-Party Defendants' Motion to Dismiss is granted, and Count III is dismissed without prejudice.

Furthermore, based on the pleadings that have been filed, the Court is not convinced that a FDUTPA claim is truly actionable under the factual allegations present in this case and further finds that the FDUPTA claim is not pled with the particularity required by Rule (b).  In addition, the Court agrees with Counter-Defendant/Third-Party Defendants in their argument that Counter-Plaintiffs have entirely failed to plead actual damages under FDUPTA.  *See QSGI v. IBM Global Financing*, No. 11-80880-CIV, 2012 WL 1150402, at *4-5 (S.D. Fla. Mar. 14, 2012) (finding the plaintiff "failed to plead any facts from which one could plausibly infer the degree to which, or even whether, the market value of any product has changed as a result" of the fraudulent conduct under FDUPTA).  Therefore, Count IV is also dismissed without prejudice.

**3.**     **Individual Defendant Christopher Miseresky**

Counter-Defendant/Third-Party Defendants move to dismiss Third-Party Defendant, Christopher Miseresky, from this case because Counter-Plaintiffs have failed to sufficiently plead a mere instrumentality or alter-ego liability theory against Miseresky.  Counter-Defendant/Third-Party Defendants argue that Counter-Plaintiffs are required to plead that Miseresky dominated and controlled the corporation to such an extent that the corporation's independent existence was non-existent, and that the shareholder was the alleged alter egos of the corporation.

Under Florida law, "[a] party seeking to pierce the corporate veil and hold a parent corporation liable for the actions of its subsidiary must prove: (1) that the subsidiary was a 'mere instrumentality' of the parent, and (2) that the parent engaged in 'improper conduct' through its organization or use of the subsidiary." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*,

8

162 F.3d 1290, 1320 (11th Cir. 1998) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117-21 (Fla. App. 1984)); *see also Molinos Valle Del Cibao C. por A. v. Lama*, 633 F.3d 1330 (11th Cir. 2011) ("To 'pierce the corporate veil[,]' the plaintiff must prove that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant."). Improper conduct is present only in "'cases in which the corporation was a mere device or sham to accomplish some ulterior purpose . . . or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.'" *Id.* (citing *Mayer v. Eastwood, Smith & Co.*, 122 Fla. 34, 164 So. 684, 687 (Fla. 1935)).

Based upon the Court's review of the Counterclaim/Third-Party Complaint, there are no allegations whatsoever to substantiate that Miseresky dominated and/or controlled the corporation to such an extent that the corporation's independent existence was non-existent, and/or that Miseresky acted as the alter ego of the corporation, as its shareholder.  To the contrary, the allegations within the Counterclaim/Third-Party Complaint allege that Miseresky acted on behalf of his companies and for the benefit of his companies.  D.E. 28 ¶¶ 9, 25, 34, 36. Under the set of facts presented within the Counterclaim/Third-Party Complaint, the Court is skeptical that Counter-Plaintiffs will be able to assert legally cognizable claims against Miseresky in his individual capacity for purposes of piercing the corporate veil.  Because the Court finds Counter-Plaintiffs should be permitted at least one opportunity to amend, Counter-Plaintiffs will be granted leave to amend the Counterclaim/Third-Party Complaint in an attempt to state a plausible claim against Miseresky.  Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff/Counter-Defendant/Third Party Defendants' Motion to Dismiss Counts II, III, IV, and V of Counterclaim and to Dismiss Christopher Miseresky from the Lawsuit Entirely (D.E. 33) is GRANTED.   Counts II, III, IV, and V are DISMISSED WITHOUT PREJUDICE.  It is further

ORDERED AND ADJUDGED that Counter-Plaintiffs are granted leave to amend its Counterclaim/Third-Party Complaint, if it so wishes, to correct the deficiencies addressed in this Order by **Thursday, June 2, 2016**.   Counter-Defendant/Third-Party Defendants SHALL file their response to Counter-Plaintiffs' Counterclaim/Third-Party Complaint on or before **Friday, June 10, 2016**.

DONE AND ORDERED in Chambers at Miami, Florida, this 24th day of May, 2016.

_____
UNITED STATES DISTRICT JUDGE

cc:
counsel of record via cm/ecf

10