UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| INSTALLER TECHNOLOGY CO., a Florida corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ADVERTISING TECHNOLOGIES LTD. d/b/a PROPELLER ADS MEDIA, a foreign limited company, and<br>FASTLINK SUPPLIES LP, a foreign limited company,<br><br>    Defendants.<br><br>ADVERTISING TECHNOLOGIES LTD., a foreign limited company, and<br>FAST LINK SUPPLIES LP, a foreign limited company,<br><br>    Counter-Plaintiffs,<br><br>v.<br><br>INSTALLER TECHNOLOGY CO., a Florida corporation,<br>CHRISTOPHER MISERESKY, an individual, and<br>NETNUCLEUS USA, INC., a Florida corporation,<br><br>    Counter-Defendants and<br>    Third-Party Defendants. | Case No.<br>1:15-cv-24738-UU<br><br>**FIRST AMENDED COUNTERCLAIMS<br>AND THIRD PARTY COMPLAINT** |

1

## **FIRST AMENDED COUNTERCLAIMS AND THIRD PARTY COMPLAINT**

For the Counterclaims and Third-Party Complaint in this matter, Advertising Technologies Ltd. and Fastlink Supplies LP state as follows:

### **PARTIES**

1. Counter-Plaintiff and Third-Party Plaintiff Advertising Technologies Ltd. d/b/a Propeller Ads Media ("Propeller") is a company incorporated in the British Virgin Islands.

2. Counter-Plaintiff and Third-Party Plaintiff Fastlink Supplies LP ("Fastlink") is a company incorporated in the United Kingdom.

3. On information and belief, Counter-Defendant Installer Technology Co. ("ITC") is a corporation incorporated in Florida. Prior to December 18, 2015, ITC was dissolved, but on December 18, 2015, the corporation was reinstated.

4. On information and belief, Third-Party Defendant Christopher Miseresky ("Mr. Miseresky") is an individual who resides in Florida.

5. On information and belief, Third-Party Defendant Netnucleus USA, Inc. ("NUI") is a corporation incorporated in Florida.

### **FACTUAL BACKGROUND**

**Background on Mr. Miseresky and His Personal Liability**

6. On information and belief, Mr. Miseresky is the Chief Executive Officer and sole shareholder of NUI, and has been so at all relevant times.

7. On information and belief, Mr. Miseresky is the sole director and sole shareholder of ITC, and has been so at all relevant times.

8. On information and belief, Mr. Miseresky dominates and controls both NUI and ITC to such an extent that the corporate existence of each is non-existence and that the corporations are alter egos of Mr. Miseresky.

9. As detailed further below, Mr. Miseresky has personally made statements purportedly on behalf of each of NUI and ITC, without regards to their corporate existence, and has swapped the liabilities, obligations, assets and businesses of NUI and ITC without regard to any corporate formalities.

10. Specifically, and without limitation, Mr. Miseresky caused ITC to take on liabilities to Propeller, built up ITC and his own business on the basis of services and benefits they received from Propeller, nominally transferred that business and those benefits to NUI, then allowed ITC to be dissolved, all in an attempt to personally take benefit from Propeller without being responsible for the liabilities.

11. On the basis of this improper conduct engaged by Mr. Miseresky through ITC and NUI, both ITC and NUI are mere instrumentalities of Mr. Miseresky.

12. Mr. Miseresky engaged in this improper conduct for the purpose of evading liability to Propeller and Fastlink.

13. It was Mr. Miseresky's improper conduct as alleged herein that has caused injury to Propeller and Fastlink.

**The Purported Agreement Between Propeller and ITC**

14. In or about September of 2014, Mr. Miseresky entered into a binding agreement purportedly on behalf of ITC with Propeller whereby Propeller would place advertisements for ITC on the Internet.

15.     Pursuant to this agreement, Propeller would show tens of millions of advertisements to internet users, who would then be directed to ITC's website. These advertisements resulted in conversions and revenue to ITC amounting to almost a million dollars.

16.     ITC was required to compensate Propeller for these services.

17.     A copy of the basic terms of the agreement signed by Mr. Miseresky is attached hereto as Exhibit 1.

18.     In addition to the terms set forth in Exhibit 1, the relationship between ITC and Propeller was subject to further terms and conditions.

19.     Propeller and ITC dispute as to the precise terms of the relationship between ITC and Propeller.

20.     Except to the extent that successor liability and/or breaching of the corporate veil may apply, Propeller and ITC are the only parties to the agreement; Fastlink, NUI and Mr. Miseresky are not parties to that agreement.

21.     However, ITC disputes that there even exists a contractual agreement between Propeller and ITC.

22.     In its Amended Complaint filed in this action, ITC challenges the validity of the contract between ITC and Propeller, alleging, for example, that ITC entered into the contract with Propeller as a result of its reliance on "false information from Defendants regarding the billing process…," which Propeller and Fastlink deny.

23.     In its Amended Complaint filed in this action, despite alleging a cause of action for breach of contract, ITC pleads also in the alternative a cause of action for Unjust Enrichment, further indicating that ITC seeks to claim that there is no contractual agreement between Propeller and Fastlink.

24. Propeller and Fastlink deny ITC's allegations, but because of the dispute between the parties as to the existence of the contract and because that contract would apply only to claims between Propeller and ITC (and not to claims relating to Fastlink, Mr. Miseresky and NUI), Propeller and Fastlink below allege causes of action for unjust enrichment and quantum meruit.

**ITC's Breaches**

25. From the beginning of the relationship between Propeller and ITC, ITC repeatedly failed to make payment on the amounts it owed Propeller.

26. In accordance with the terms of the agreement between the parties, Propeller would invoice ITC on a weekly basis and ITC was required to pay that invoice within 7 days.

27. However, starting in or around November of 2014, ITC began delaying payments on invoices until they were regularly over 45 days late, if they were paid at all.

28. By March of 2015, ITC was paying invoices 60 days late.

29. For example, ITC did not pay its June 8, 2015 invoice until August 11, 2015.

30. Prior to June of 2015, on at least three occasions ITC failed to make payments at all on outstanding amounts.

31. ITC paid only $16,066.11 out of the due $18,589.97 on the December 8, 2014 invoice (and only paid that amount on January 8, 2015).

32. ITC completely failed to pay the $14,105.32 February 3, 2015 invoice and the $22,741.73 May 18, 2015 invoice

**ITC, NUI and Mr. Miseresky Fraudulent Acts**

33. Propeller made multiple requests for payment on these invoices and Mr. Miseresky told Propeller either that the payments were forthcoming or that the payments were made on time.

34. In reliance on Mr. Miseresky's representations, Propeller continued to provide advertising services to ITC, NUI and Mr. Miseresky.

35. As just one specific instance of ITC, NUI and Mr. Miseresky's fraudulent misrepresentations:

   a. Propeller sent ITC the invoice for services rendered between January 26 and February 1, 2015 in the amount of $14,105.32 on or about February 3, 2015.

   b. ITC was obligated to make payment on that invoice within seven (7) days of the date of the invoice, i.e. February 10, 2015.

   c. Mr. Miseresky stated that the payment on that invoice was sent on or about March 19, 2015, well over a month late.

   d. Based on this statement, Propeller continued to provide services to ITC.

   e. On or about April 7, 2015, Propeller learned from Mr. Miseresky that the bank had purportedly returned the payment. Mr. Miseresky did not provide sufficient explanation for why that would be.

   f. On or about April 25, 2015, Propeller conducted a payment reconciliation and was informed that the payment for the February 3 invoice was resent.

   g. On or about June 4, 2015, Propeller had not received the payment and asked ITC, NUI and Mr. Miseresky about the status of the payment. That request went unresolved.

h.      On or about June 23, 2015, Propeller had still not received the payment and asked about the status of the payment in writing. That request went unresolved.

i.      On or about July 3, 2015, Propeller had still not received the payment and asked about the status of the payment in writing. That request went unresolved.

j.      On or about July 6, 2015, Propeller requested in writing documentation confirming the purported previous payments and any other information regarding that previous payment.

k.      On or about July 8, 2015, an individual working for ITC, NUI and Mr. Miseresky named Michael wrote back to Propeller feigning ignorance of the entire situation and continuing to try to put off reconciliation. Michael wrote as follows:

> Can you provide more details on this missing Jan/Feb payment, we had this resent back in Feb and my concern is we will have to perform an audit with our bank to locate if you did not receive at this point, our electronic records are only kept for 60 days, after that we need to get the bank to reprint from archives due to our accounting firms Sarbanes-Oxley compliance, it is a mess and I would prefer to not have to go through that.

l.      Given all of the foregoing, it is obvious that ITC, NUI and Mr. Miseresky were simply trying to fraudulently continue milking Propeller for its services without paying for as long as possible.

m.      On or about July 16, 2015, ITC, NUI and Mr. Miseresky stated that they needed to check their payment archives and asked that propeller provide them with a list of all received payments. On information and belief, given the many attempts over the past months to resolve this, this request was simply a fraudulently attempt to continue to delay.

    n.      Regardless, on the basis of these representations, on or about July 16, 2015, Propeller sent ITC, NUI and Mr. Miseresky a list of all payments they had received from ITC, NUI and Mr. Miseresky.

    o.      ITC, NUI and Mr. Miseresky thereafter promised to start an investigation into the purportedly missing payment.

    p.      ITC, NUI and Mr. Miseresky never informed Propeller or Fastlink of any result of that purported investigation and never made payment on the February 3 invoice.

36.    As another specific instance of ITC, NUI and Mr. Miseresky's fraudulent misrepresentations:

    a.      On the basis of ITC, NUI and Mr. Miseresky's representations that their payments were delayed because of Propeller's bank (a representation which Propeller and Fastlink believe to be false), Propeller and Fastlink provided ITC, NUI and Mr. Miseresky with new banking account details for payments.

    b.      However, Propeller and Fastlink were unable to reissue old invoices with the new details because ITC, NUI and Mr. Miseresky never provided Propeller and Fastlink with payment reconciliations despite numerous requests (see, *e.g.*, *supra*).

    c.      On or about June 3, 2015, Propeller and Fastlink provided to ITC, NUI and Mr. Miseresky the new banking details for Fastlink's account at Rietumu Bank.

    d.      On or about June 9, 2015, Propeller and Fastlink reissued the invoice for services provided June 1 through June 7 with the new bank details for payments and asked ITC, NUI and Mr. Miseresky about the unpaid invoices.

  e. On or about June 26, 2015, Mr. Miseresky told Propeller and Fastlink that he would send a "test payment" and asked once again for the banking details, despite having received them multiple times.

  f. On or about July 3, 2015, Propeller and Fastlink gave Mr. Miseresky the banking details for Fastlink's account at Rietumu Bank once again.

  g. In response to receiving the banking details for at least the third time, Mr. Miseresky falsely stated that he never received the new banking details.

  h. Shortly thereafter, Propeller and Fastlink reissued invoices for July, August and September with the new banking details.

  i. On or about September 28, 2015, on a phone call, Mr. Miseresky stated that he would begin to use the new banking details for payments but again delayed by saying that he would not pay until he could reconcile what was paid and what was not (despite having multiple times been shown what was not paid).

  j. On that phone call, Mr. Miseresky agreed that he would send Propeller and Fastlink a list of all purportedly paid invoices so that Propeller and Fastlink could issue, yet another time, the invoices for the remaining balances.

  k. Mr. Miseresky did not send these documents, thereafter ignored Propeller and Fastlink's attempts to contact him and ITC, NUI and Mr. Miseresky did not make any further payments.

37. The foregoing instances do not intend to be an exclusive description of all instances of fraud and/or misrepresentation by ITC, NUI and Mr. Miseresky.

38. ITC, NUI and Mr. Miseresky's representations were false as they either never actually sent the payments they claimed to have sent nor, on information and belief, did they ever intend to send those payments.

39. ITC, NUI and Mr. Miseresky's continued representations that payments were "lost" or that they needed to do reconciliation or accounting on their side were similarly misrepresentations intended to induce (and which did induce) Propeller to continue providing services from which ITC, NUI and Mr. Miseresky were receiving revenue but for which they refused to pay.

**Additional Factual Background**

40. In the later stages of the relationship between ITC and Propeller, when ITC, NUI or Mr. Miseresky made any payment at all, those payments were made from NUI's accounts.

41. ITC was dissolved on September 25, 2015.

42. On information and believe, Mr. Miseresky permitted ITC to dissolve or caused ITC to dissolve in order to attempt to fraudulently evade its liabilities to Propeller and Fastlink.

43. On information and belief, NUI is ITC's successor and was created in an attempt to hinder or delay ITC's creditors, including Propeller and Fastlink.

44. On further information and belief, NUI conducts the same business as ITC did and has many (if not all) of the same customers and clients.

45. Additionally, given that NUI was making payments on behalf of ITC, that ITC was dissolved and that Mr. Miseresky is the only listed officer/director of both NUI and ITC, NUI is the successor business to ITC and is responsible for ITC's liabilities, as is Mr. Miseresky personally.

46. By June of 2015, invoicing operations for Propeller were taken over by Fastlink, which sent its first invoice to ITC on June 8, 2015.

47. To date, ITC, NUI and Mr. Miseresky owe $263,112.99 for services provided by Propeller.

48. Propeller continued to provide its services to ITC, NUI and Mr. Miseresky in reasonable reliance on ITC, NUI and Mr. Miseresky's representations to Propeller and Fastlink that they would be promptly and properly paid.

## COUNT I – BREACH OF CONTRACT
## PROPELLER AGAINST ITC

49. Propeller repeats, re-alleges and incorporates each and every allegation of the preceding paragraphs as if set forth herein.

50. ITC entered into a contract with Propeller pursuant to which Propeller would provide advertising related services to ITC and ITC would pay Propeller for such services.

51. Propeller complied with all of its obligations pursuant to its contract with ITC.

52. ITC has breached the contract with Propeller by its actions and omissions as described herein, including, without limitation, by failing to make payment on the services provided.

53. Propeller has suffered direct harm and damages resulting from ITC's breaches of the contract, for which ITC is liable.

## COUNT II – UNJUST ENRICHMENT IN THE ALTERNATIVE
## PROPELLER AGAINST ITC

54. In the alternative, Propeller hereby asserts an equitable claim for unjust enrichment against ITC.[1]

---

[1] Because ITC disputes the validity and enforceability of the contract in its own complaint, this count – pled in the alternative – is properly pled. *See, e.g.,* Samana Inc. v. Lucena, 2016 U.S. Dist. LEXIS 4860, 2-3 (S.D. Fla. Jan. 4,

55.     Propeller repeats, re-alleges and incorporates each and every allegation of the preceding paragraphs as if set forth herein.

56.     ITC has alleged that there is no contractual agreement between Propeller and ITC for the services that Propeller provided to ITC and for which Propeller alleges ITC is obligated to pay Propeller.

57.     ITC, by its actions, as described herein, obtained and/or received services from Propeller and/or Propeller conferred a benefit onto ITC to which it was not entitled, and ITC has thus been unjustly enriched to the detriment and harm of Propeller.

58.     By virtue of the foregoing, Propeller is entitled to an award of damages against ITC.

### COUNT III – UNJUST ENRICHMENT
### PROPELLER AGAINST NUI AND MR. MISERESKY
### AND FASTLINK AGAINST ITC, NUI AND MR. MISERESKY[2]

---

2016) ("Defendants have also moved to dismiss Count IV, a claim for unjust enrichment. Defendants contend that the unjust enrichment claim must be dismissed because Plaintiff has asserted that an express contract exists.… Rule 8 of the Federal Rules of Civil Procedure specifically authorizes a plaintiff to plead causes of action in the alternative, and Florida courts have found that a party may plead in the alternative the existence, and breach, of an express contract and an unjust enrichment claim.… This is in part because 'it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails.'"); Martorella v. Deutsche Bank Nat'l Trust Co., 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013) ("[A] party may plead in the alternative for relief under an express contract and for unjust enrichment.… But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid." (numerous citations omitted)); Sekula v. Residential Credit Solutions, Inc., 2016 U.S. Dist. LEXIS 51636 (M.D. Fla. Apr. 18, 2016) ("A plaintiff may plead in the alternative for relief under an express contract and for unjust enrichment, but only where one of the parties asserts that the contract governing the dispute is invalid."); Binion v. O'Neal, 2016 U.S. Dist. LEXIS 2906 (S.D. Fla. Jan. 11, 2016) ("As unjust enrichment is an equitable remedy, a plaintiff may not prevail upon the claim if he has an adequate remedy at law.  But the claim may be pleaded in the alternative."); Yellow Telescope, LLC v. Miller, 2015 U.S. Dist. LEXIS 120536 (S.D. Fla. Sept. 10, 2015) ("Defendant argues that Plaintiff's claims for unjust enrichment and quantum meruit fail because Plaintiff has an adequate remedy at law — as evidenced by its breach of contract claim. However, plaintiffs are not prohibited from filing claims in the alternative."). See, also, Kurhu v. Vital Pharmaceuticals, Inc., 2013 WL 4047016 *8-9 (S.D. Fla. 2013).

[2] Except to the extent that successor liability and/or breaching of the corporate veil may apply, Propeller and ITC are the only parties to the (disputed) contract involved in this dispute.  Therefore, this cause of action as alleged between the other parties is not barred by the existence of that (disputed) contract.  See, e.g., Rushing v. Wells Fargo Bank, N.A., 752 F.Supp.2d 1254, 1265 (M.D. Fla. 2010) ("The County's reliance on Williams v. Bear Stearns & Co. [for the proposition that a motion to dismiss an unjust enrichment claim is premature] is misplaced, because in that case the plaintiff did not have a contract with some of the defendants.")[2]; Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla. 5th DCA 1998) ("NHL did not have a contract with Ramsey, Ramirez, or Franklin.  Hence, the unjust enrichment claims were improperly dismissed as to Ramsey and Ramirez."); Venerus v. Avis Budget Car Rental,

59.     Propeller and Fastlink repeat, re-allege and incorporate each and every allegation of the preceding paragraphs as if set forth herein.

60.     NUI and Mr. Miseresky, by their actions, as described herein, obtained and/or received services from Propeller and/or Propeller conferred a benefit onto NUI and Mr. Miseresky to which they were not entitled, and NUI and Mr. Miseresky have thus been unjustly enriched to the detriment and harm of Propeller.

61.     ITC, NUI and Mr. Miseresky, by their actions, as described herein, obtained and/or received services from Fastlink and/or Fastlink conferred a benefit onto ITC, NUI and Mr. Miseresky to which they were not entitled, and ITC, NUI and Mr. Miseresky have thus been unjustly enriched to the detriment and harm of Fastlink.

62.     By virtue of the foregoing, Propeller is entitled to an award of damages against NUI and Mr. Miseresky and Fastlink is entitled to an award of damages against ITC, NUI and Mr. Miseresky.

### COUNT IV – QUANTUM MERUIT IN THE ALTERNATIVE
### PROPELLER AGAINST ITC

63.     In the alternative, Propeller hereby asserts an equitable claim for quantum meruit against ITC.[3]

64.     Propeller repeats, re-alleges and incorporates each and every allegation of the preceding paragraphs as if set forth herein.

65.     Propeller provided services to ITC at the request of ITC.

66.     ITC knew or reasonably should have known that such services were provided with the expectation that ITC would pay Propeller for the rendering of such services.

---

LLC, 2014 WL 4092323 *5 (M.D. Fla. 2014) (cause of action for unjust enrichment against party where there was no admission of a written agreement survives motion for summary judgment).
[3] *See*, Footnote 1, *supra*.

67.     ITC has failed to pay for the services rendered.

68.     Propeller has suffered damages as a result of ITC's actions and omissions.

## COUNT V – QUANTUM MERUIT
## PROPELLER AGAINST NUI AND MR. MISERESKY
## AND FASTLINK AGAINST ITC, NUI AND MR. MISERESKY[4]

69.     Propeller and Fastlink repeat, re-allege and incorporate each and every allegation of the preceding paragraphs as if set forth herein.

70.     Propeller provided services to ITC, NUI and Mr. Miseresky at the request of ITC, NUI and Mr. Miseresky.

71.     NUI and Mr. Miseresky knew or reasonably should have known that such services were provided with the expectation that NUI and Mr. Miseresky would pay Propeller for the rendering of such services.

72.     ITC, NUI and Mr. Miseresky knew or reasonably should have known that such services were provided with the expectation that ITC, NUI and Mr. Miseresky would pay Fastlink for the rendering of such services.

73.     ITC, NUI and Mr. Miseresky have failed to pay for the services rendered.

74.     Propeller and Fastlink have suffered damages as a result of ITC, NUI and Mr. Miseresky's actions and omissions.

## COUNT VI – FRAUD/INTENTIONAL MISREPRESENTATIONS
## PROPELLER AND FASTLINK AGAINST
## ITC, NUI AND MR. MISERESKY

75.     Propeller and Fastlink repeat, re-allege and incorporate each and every allegation of the preceding paragraphs as if set forth herein.

76.     ITC, NUI and Mr. Miseresky, jointly and severally, intentionally made misrepresentations to Propeller and Fastlink as set forth herein, including, without limitation,

---

[4] *See*, Footnote 2, *supra*.

multiple intentional misrepresentations that payments were made or that payments were forthcoming for services provided.

77. ITC, NUI and Mr. Miseresky knew these representations to be false when they made them or made them recklessly without knowledge of truth.

78. Moreover, the fact that ITC, NUI and Mr. Miseresky repeatedly failed to comply with their promises and representations, as detailed herein, indicate a clear intentional misrepresentation and intent to defraud Propeller and Fastlink.

79. ITC, NUI and Mr. Miseresky made these representations to Propeller and Fastlink for the purpose of inducing Propeller to continue to provide services to ITC, NUI and Mr. Miseresky and from holding off on taking legal action.

80. Propeller and Fastlink justifiably and reasonably relied upon ITC, NUI and Mr. Miseresky's representations when Propeller continued to provide services and when Propeller and Fastlink refrained from taking further action when ITC, NUI and Mr. Miseresky failed to make payments on outstanding amounts.

81. Propeller and Fastlink were injured as a direct and proximate result of their reliance on ITC, NUI and Mr. Miseresky's misrepresentations, for which ITC, NUI and Mr. Miseresky are liable.

**COUNT VII – VIOLATION OF FLORIDA'S
DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
PROPELLER AND FASTLINK AGAINST
ITC, NUI AND MR. MISERESKY**

82. Propeller and Fastlink repeat, re-allege and incorporate each and every allegation of the preceding paragraphs as if set forth herein.

83. The actions and omissions of ITC, NUI and Mr. Miseresky as set forth herein constitute unfair methods of competition, unconscionable acts or practices, misrepresentations

and/or fraudulent acts and/or unfair acts or practices in trade or commerce in violation of Florida's Deceptive and Unfair Trade Practices Act.

84.	These actions and omissions proximately caused actual damages to Propeller and Fastlink for which ITC, NUI and Mr. Miseresky are liable.

### PROPELLER AND FASTLINK DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

### REQUESTED RELIEF

WHEREFORE, Propeller and Fastlink pray that this honorable court will award the following:

1.	Enter judgment for Propeller and Fastlink on all Counts of their Counterclaims and Third-Party Complaint;

2.	Award Propeller and Fastlink damages and losses as determined at trial, including, without limitation, actual damages, consequential damages, punitive damages, attorney's fees, multiple damages, treble damages, interest and costs as may be provided by law;

3.	Grant Propeller and Fastlink such other relief as the Court deems just and proper.

**Respectfully submitted:**

/s/ Brady J. Cobb
Brady J. Cobb, Esquire
Florida Bar No. 031018
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile (954) 900-5507
bcocc@cobbeddy.com

*Attorney for Propeller and Fastlink*

Dated: June 2, 2016

# **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the attached service list this 2nd day of June, 2016.

**Service List**
**1:15-cv-24738-UU**

Avery A. Dial
Fowler White Burnett, P.A.
One Southeast 3rd Avenue
21st Floor
Fort Lauderdale, FL 33394
954-377-8100
954-377-8101 (fax)
adial@fowler-white.com

Aaron Michael Dmiszewicki
Fowler White Burnett, P.A.
One Financial Plaza
100 SE Third Avenue, 21st Floor
Fort Lauderdale, FL 33394
(954) 377-8100
admiszewicki@fowler-white.com