UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| INSTALLER TECHNOLOGY CO., a Florida corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ADVERTISING TECHNOLOGIES LTD. d/b/a PROPELLER ADS MEDIA, a foreign limited company, and<br>FASTLINK SUPPLIES LP, a foreign limited company,<br><br>    Defendants.<br><br>ADVERTISING TECHNOLOGIES LTD., a foreign limited company, and<br>FAST LINK SUPPLIES LP, a foreign limited company,<br><br>    Counter-Plaintiffs,<br><br>v.<br><br>INSTALLER TECHNOLOGY CO., a Florida corporation,<br>CHRISTOPHER MISERESKY, an individual, and<br>NETNUCLEUS USA, INC., a Florida corporation,<br><br>    Counter-Defendants and<br>    Third-Party Defendants. | Case No.<br>1:15-cv-24738-UU<br><br>**OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY CLAIMS** |

1

> "The most famous definition of 'chutzpah' is, of course, itself law-themed:
> Chutzpah is when a man kills both his parents and begs
> the court for mercy because he's an orphan."
>
> -- Kozinski, A. and Volokh, E., *Lawsuit, Shmawsuit*, 103 YALE L.J. 463 (1993)

## INTRODUCTION

Give the Movants points for chutzpah. Having first filed a Complaint that contains 53 paragraphs of factual allegations, *which they then repeat and re-allege for each count of their Complaint* (counts which add no additional facts, but which rather simply recite the legal elements of the claim presented in the relevant count), Movants now move for dismissal of the Counterclaims and Third Party claims, disingenuously complaining that they cannot possibly respond to the Counterclaims and Third Party claims because the 48 paragraphs of factual allegations contained therein constitute a "shotgun pleading."[1] It is a motion so lacking in legitimate arguments that one cannot help but conclude that it was interposed for "an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11.

That the Movants should want to stall the present litigation is no surprise. Plaintiff's complaint – which was filed ten days after the Movants received a demand letter from the Defendants seeking payment of the more than $250,000 that the Movants owed Defendants – is nothing more than a cynical attempt to avoid liability by asserting frivolous claims in the hopes that the Defendants will abandon their legitimate claims. That the Movants think this Court will be so easily fooled *is* a surprise.

---

[1] Plaintiffs appear to like playing "do as I say, not as I do" very much having previously moved to dismiss counter-claims and third-party claims because the claims were plead in the alternative – much as the Plaintiffs themselves did in their Complaint.

Because Movants' motion is entirely without merit – and, indeed, is both hypocritical and frivolous on its face – it should be denied in its entirety. In further support of their Opposition, Advertising Technologies Ltd. d/b/a Propeller Ads Media ("Propeller") and Fastlink Supplies LP's ("Fastlink," and together with Propeller, "Counter-Plaintiffs") state as follows.

## LEGAL ARGUMENT

### I. The Counterclaims and Third Party Claims Are Not "Shotgun Pleadings."

As the Eleventh Circuit has frequently explained, a "shotgun pleading" is a complaint "which is so muddled that it is difficult to discern what the appellants are alleging beyond the mere names of certain causes of action." *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 903 (11th Cir. 1996). Shotgun complaints are typically extraordinarily long, name a dozen or more undistinguished defendants, and contain non-sequitur allegations hiding the true nature of the action. *See, e.g.*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is a quintessential 'shotgun' pleading…. It is fifty-eight pages long. It names fourteen defendants, and all defendants are charged in each count. The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged…. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."); *Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 164 (11th Cir. 1997) ("On May 25, 1995, Appellant Paule Ebrahimi instituted this civil rights action by filing a prototypical 'shotgun complaint.' The complaint offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants associated with the McDonnell Elementary School."); *Anderson v. District Bd. of Trustees of Cent. Florida Community College,* 77 F.3d 364, 366 (11th Cir. 1996) ("Anderson's complaint is a perfect example of 'shotgun' pleading … in that it is virtually

impossible to know which allegations of fact are intended to support which claim(s) for relief."); *Pelletier v. Zweifel,* 921 F.2d 1465, 1518 (11th Cir. 1991) ("They are quintessential 'shotgun' pleadings, replete with factual allegations that could not possibly be material to any of the causes of action they assert.").

In *Weiland v. Palm Beach County Sheriff's Office*, the Eleventh Circuit discussed the different types of "shotgun pleadings" often encountered by the Courts, concluding that, "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." 792 F.3d 1313, 1322-23 (11th Cir. 2015). This Court has emphasized this point as well. *Combe v. Flocar Inv. Group Corp.*, 977 F. Supp. 2d 1301, 1306 (S.D. Fla. 2013) ("Defendants argue that Plaintiffs have filed a shotgun pleading in which every allegation is incorporated by reference into each subsequent claim, making it impossible for them to properly respond. Nonsense. The fraud counts do not incorporate every preceding allegation, but only those in the first 44 paragraphs. These paragraphs, in turn, are grouped by transaction and, in some instances, by particular defendant. Each individual count also specifies the pertinent transaction and identifies the Defendants against whom the claim is lodged. The Defendants' assertion that it is impossible for them to properly respond to each count can hardly be taken seriously."); *Millennium Labs., Inc. v. Aegis Scis. Corp.*, 2011 U.S. Dist. LEXIS 100857 (S.D. Fla. Sept. 7, 2011) ("Aegis argues that the Amended Complaint should be dismissed as a shotgun pleading. This argument is entirely without merit. A shotgun pleading is one in which each count incorporates by reference all of the paragraphs of each preceding count so that it is virtually impossible for the opposing party to respond accordingly.").

In the present case, the Counterclaims and Third-Party Claims cannot reasonably be deemed a shotgun pleading as it very clearly gives Movants adequate notice of the claims against them and the grounds upon which each claim rests. The pleading itself is only 15 substantive pages long, with over four of those pages devoted to setting forth in specificity the basis for the alleged fraudulent actions of Movants (¶¶ 33-39).[2] The pleading seeks relief from only three parties, each of which are distinguished from one another at every reasonable opportunity. The Factual Background section (¶¶ 6-48) contains sub-headings to easily distinguish and set forth the factual basis for the causes of action. The Factual Background section contains a sub-section specifically devoted to the explanation of Mr. Miseresky's personal liability (¶¶ 6-13); a sub-section discussing the contract between Propeller and ITC, how ITC has disputed the validity of that agreement and why there are alternative causes of action plead (¶¶ 14-24); a sub-section setting forth the specific basis for ITC's breach of the contract (¶¶ 25-32); and a sub-section devoted to stating in specificity the fraudulent acts of Movants (¶¶ 33-39). Each and every allegation is material to the asserted counts and the counterclaims and third party claims set forth in a straight-forward and easily understandable manner why the specific allegations are made.

Movants' argument appears to be predicated solely on the basis that the Counterclaims and Third-Party Claims contain allegations in each of the Counts that Counter-Plaintiffs "repeat, re-allege and incorporate each and every allegation of the preceding paragraphs as if set forth herein." Ignoring the fact that *their own complaint incorporates each and every factual allegation at the start of each of the counts*, Movants argue (without apparent shame or irony) that such language *must* render a pleading a "shotgun pleading," regardless of whether the

---

[2] Additional space is taken up by footnotes setting forth the legal basis for the counts alleged so as to streamline the litigation to prevent unnecessary motions to dismiss. These footnotes appear to have been successful as none of the arguments set forth in Movants' first Motion to Dismiss have been repeated in the Motion currently under consideration.

pleading provides the responding party with sufficient notice of the basis of the claims asserted. In reality, however, the Eleventh Circuit (and this Court) have only admonished the use of such language when it is impossible to discern whether the pleading ultimately states sufficient facts to support a given claim.  For example, in *Wagner v. First Horizon Pharmaceutical Corp.,* the Eleventh Circuit explained:

> ***The central problem is that the factual particularity of the first 175 paragraphs is not connected to the otherwise generally pled claim in any meaningful way****….* The lack of connection between the substantive count and the factual predicates is the central problem with each of the enumerated counts in the complaint, because courts cannot perform their gatekeeping function with regard to the averments of fraud.  It is not that we know that plaintiffs cannot state a claim but rather that we do not know whether they have.  This is because plaintiffs have not connected their facts to their claims in a manner sufficient to satisfy Rule 9(b).
>
> Nonetheless, we disagree that dismissal was the appropriate course of action for the district court to take at this juncture in the litigation.  As the district court concluded, 'the problem was not that Plaintiffs did not allege enough facts, or failed to recite magic words; the problem lay in the fact that while Plaintiffs introduced a great deal of factual allegations, the amended complaint did not clearly link any of those facts to its causes of action.'

464 F.3d 1273, 1279-80 (11th Cir. 2006) (emphasis added) (vacating dismissal of complaint and ordering repleading).

None of the concerns articulated by the *Wagner* case are present in the Counterclaims and Third-Party Claims.  Preliminarily, where – as here – many of the claims are differing theories of liability stated in the alternative, but arising, obviously, from the same operative set of facts, the concerns of "shotgun pleading" are simply non-existent because the same facts *do* relate to multiple claims.

Moreover, even if this were not the case, the Counterclaims and Third-Party Claims took pains to categorize and subcategorize the facts alleged, creating a simple and coherent roadmap to the factual basis for the stated claims.  Specifically, the Factual Background section sets forth

in bolded and underlined sub-headings the connection that each subsection has to each of the counts of the Counterclaims and Third-Party Claims. The first subsection, "Background on Mr. Miseresky and His Personal Liability," clearly sets forth the factual basis for why Mr. Miseresky (and as a result NUI) are jointly and severally liable with ITC (Counts III (Unjust Enrichment), V (Quantum Meruit), VI (Fraud/Intentional Misrepresentation), and VII (FDUTPA)). The second subsection, "The Purported Agreement Between Propeller and ITC," pertains to Propeller's Count I (Breach of Contract) against ITC, as well as Counts II (Unjust Enrichment, asserted in the Alternative) and IV (Quantum Meruit, asserted in the Alternative). The third subsection, "ITC's Breaches," relates to the Breach of Contract claim (Count I). The fourth subsection, "ITC, NUI and Mr. Miseresky['s] Fraudulent Acts," obviously relates to the counts for Fraud/Intentional Misrepresentation (Count VI) and violation of Florida's Deceptive and Unfair Trade Practices Act (Count VII). The final section, "Additional Factual Background," consisting of just nine paragraphs, sets forth additional general allegations relevant to all of the counts. No reasonable reader of the Counterclaims and Third-Party Claims could be confused as to what Counter-Plaintiffs are alleging in the Counterclaims and Third-Party Claims or what factual allegations pertain to which of the counts of the Counterclaims and Third-Party Claims.

The *Weiland* case, in which the Eleventh Circuit defined "shotgun pleadings," quoted *supra*, is directly on point. In that case, the district court had initially dismissed the plaintiff's complaint because it contained language incorporating all of the allegations of the prior paragraphs. 792 F.3d at 1324. However, the Eleventh Circuit vacated the dismissal and held that the complaint was *not* a shotgun pleading, despite the use of that language. As the Court explained:

> Weiland's re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading. But it is not….
>
> What we have here is different. …this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count. This may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why there were liable for doing it. And it may also explain why the district court could and did understand the claims that were stated in these two counts….
>
> The task of figuring out which of the 49 paragraphs that are incorporated into count one are relevant to a claim of 'excessive and unreasonable force' is hardly a task at all. It is greatly simplified by the organization of the 49 paragraphs of factual allegations into three subsections, the first of which is titled 'Facts Surrounding the Shooting of [Christopher Weiland]" and consists of 23 paragraphs spanning just over six pages….
>
> A dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'… No such virtual impossibility exists in this case.

*Id.* at 1324-25 (emphasis added; citations omitted).

The Counterclaims and Third-Party Claims are not, under any reasonable reading, a "shotgun pleading," but instead give Movants "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. Movants are entitled to no more and, indeed, provide no more in their own Complaint. As such, Movants' motion should be denied in its entirety.

    II.  <u>**The Pleadings Against the Third-Party Defendants Are Properly Pled**</u>

Movants next seek to dismiss all counts against Third-Party Defendants Mr. Miseresky and NUI, arguing that the reinstatement of ITC as an empty corporate shell – *after* all of ITC's assets (including clients) were transferred to NUI – somehow magically negates Propeller's and

8

Fastlink's claims for vicarious liability, successor liability, and piercing the corporate veil. It is Movants' ultimate "pay no attention to the man behind the curtain" moment.

Before addressing the claim head-on, it is important to note that Movants' "reinstatement" argument is the *only* argument that Movants make in support of their assertion that the claims against the Third-Party Defendants should be dismissed. Along the way, Movants dutifully ignore every other factual allegation made in support of Propeller's and Fastlink's claims for vicarious liability, successor liability, and piercing of the corporate veil. However, the mere fact that Mr. Miseresky cynically reinstated ITC immediately prior to filing the Complaint in this matter (and clearly as an attempt to avoid unavoidable liability) does not alter in any way the well-plead allegations for vicarious liability, successor liability, and piercing of the corporate veil.

Without repeating herein each of the paragraphs setting forth the basis for liability against the Third Parties (set forth in detail in paragraphs 6 through 13 and 40 through 45 of the Counterclaims, and supported by allegations throughout), Counter-Plaintiffs allege that Mr. Miseresky dominates and controls both NUI and ITC and operates them without regard for proper corporate formalities, trading their liabilities, obligations, assets, and clients without regard to any corporate formalities. Counterclaims and Third-Party Claims, ¶¶ 8-9. "Specifically, and without limitation, Mr. Miseresky caused ITC to take on liabilities to Propeller, built up ITC and his own business on the basis of services and benefits they received from Propeller, nominally transferred that business and those benefits to NUI, then allowed ITC to be dissolved, all in an attempt to personally take benefit from Propeller without being responsible for the liabilities." *Id.*, ¶¶ 10. Counter-Plaintiffs have further alleged that NUI is

ITC's successor, created in an attempt to hinder or delay ITC's creditors (including Counter-Plaintiffs) and that NUI conducts the same business as ITC. *Id.*, ¶¶ 43-44.

By saddling ITC with all of the corporate liabilities, while siphoning off to NUI all of the company's assets (including its client base), Mr. Miseresky subjected himself and NUI to the liabilities of ITC. Neither piercing the corporate veil nor successor liability depends on whether Mr. Miseresky reinstated ITC as a litigation ploy after he allowed it to be dissolved – or indeed whether the corporation was even dissolved in the first place.[3] Dissolution and/or reinstatement are simply irrelevant to the elements necessary to properly plead claims for piercing the corporate veil and successor liability. *See, e.g., Johnson Enters. Of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1320 (11th Cir. 1998) ("A party seeking to pierce the corporate veil and hold a parent corporation liable for actions of its subsidiary must prove: (1) that the subsidiary was a 'mere instrumentality of the parent, and (2) that the parent engaged in 'improper conduct' through its organization or use of the subsidiary." (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117-21 (Fla. App. 1984)); *Molinos Valle Del Cibao C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) ("[T]he plaintiff must prove that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existence and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant."); *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F.Supp.2d 1353, 1368-69 (S.D. Fla. 2011) ("To assert a claim against a defendant under a successor liability theory, a plaintiff must

---

[3] If such shenanigans were sufficient to avoid liability, the entire concepts of piercing the corporate veil and successor liability would be eviscerated – *every* corporate defendant facing liability would simply transfer its assets to a new business, thwarting the rights of creditors, and carry on as if nothing had happened.

allege, '(1) the successor impliedly assume[d] the obligations of the predecessor, (2) the transaction is a de facto[] merger, (3) the successor corporation is a mere continuation of the predecessor, of (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor.'" (*quoting Orlando Light Bulb Serv., Inc. v. Laser Lighting and Elec. Supply, Inc.,* 523 So.2d 740, 742 (Fla. 5th DCA 1988))).

Contrary to Movants' assertions, Propeller's and Fastlink's claims against the Third-Party Defendants do not rest entirely (or even substantially) upon the dissolution or reinstatement of ITC, nor does the all-too-convenient reinstatement of ITC have any bearing on whether the claims against Mr. Miseresky and/or NUI are properly plead. If one were to take Movants' argument to its (il)logical conclusion, piercing the corporate veil and successor liability could *never* succeed as long as the original corporate entity continued to exist on the books of the Secretary of State. Such is obviously not the case.

For these reasons, Movants' motion to dismiss the counts against Third-Party Defendants Mr. Miseresky and NUI should be denied.

### III.  Fastlink Has Standing for its Claims

Finally, Movants argue that the claims brought be Fastlink – *an entity which they named as a Defendant in their own Complaint* – should be dismissed because (according to Movants) Fastlink is entirely irrelevant to the present litigation. The argument is, of course, absurd on its face. (Have mercy on the Movants, your honor, for they are orphans.)

Even if the court were to put aside the Movants' blatant hypocrisy, it would be left only with their unsupportable assertions. Specifically, Movants attempt to paint a picture in their Motion that "Fastlink has not claimed any involvement other than essentially acting as billing company for Propeller." Not only is the allegation untrue (and contradicted by the allegations in

11

the Counterclaims and Third Party Claims), it would not support Movants' motion even if it had been true.

  First, it bears mentioning that, if Fastlink was acting as no more than a billing company, then there was no legitimate basis for ITC to allege a violation of Florida's Deceptive and Unfair Trade Practices Act against Fastlink, as it does in its complaint.  Moreover, as alleged in paragraph 46 of the Counterclaims and Third-Party Claims, Movants were obligated to make all of their payments to Fastlink starting in June of 2015.  Therefore, to the extent that Movants failed to make any payments on the services provided thereafter, Fastlink was an injured party because it was a party that did not receive funds that it had a right to receive.

  Additionally, Fastlink has appropriately alleged that it detrimentally relied on specific statements of Movants and that Fastlink was harmed as a result of such reliance.  Paragraphs 36(a) through (k) set forth in detail the misrepresentations Movants made to Fastlink; Fastlink's reliance upon those misrepresentations; and how Fastlink was damaged by those misrepresentations.  *See also Counterclaims and Third Party Claims*, ¶ 80.  The fact that Movants chose to *pretend* that the allegations do not exist does not actually make them disappear from the pleading.

  Finally, even if Fastlink was just a "billing company for Propeller," it would be obligated to pay Propeller for the amounts that it was supposed to receive from Movants, an obligation that it would not have undertaken if not for the misrepresentations of Movants.

  In short, not only are Movants' arguments regarding Fastlink incorrect, they would not in any case support a dismissal of Fastlink's claims in this litigation.  As such, Movants' motion to dismiss should be denied.

## **CONCLUSION**

For the reasons set forth herein, Propeller and Fastlink respectfully request that the Court deny Movants' Motion to Dismiss in its entirety.


**Respectfully submitted:**

/s/ Brady J. Cobb
Brady J. Cobb, Esquire
Florida Bar No. 031018
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile (954) 900-5507
bcocc@cobbeddy.com

*Attorney for Defendants/Counter-Plaintiffs*

Dated: June 23, 2016

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the attached service list this 23rd day of June, 2016.

**Service List**
**1:15-cv-24738-UU**

Avery A. Dial
Fowler White Burnett, P.A.
One Southeast 3rd Avenue
21st Floor
Fort Lauderdale, FL 33394
954-377-8100
954-377-8101 (fax)
adial@fowler-white.com

Aaron Michael Dmiszewicki
Fowler White Burnett, P.A.
One Financial Plaza
100 SE Third Avenue, 21st Floor
Fort Lauderdale, FL 33394
(954) 377-8100
admiszewicki@fowler-white.com