UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| INSTALLER TECHNOLOGY CO., a Florida corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ADVERTISING TECHNOLOGIES LTD. d/b/a PROPELLER ADS MEDIA, a foreign corporation, and FASTLINK SUPPLIES LP, a foreign limited company,<br><br>    Defendants. | |
| ADVERTISING TECHNOLOGIES LTD., a foreign corporation, and FASTLINK SUPPLIES LP, a foreign limited partnership,<br><br>    Counterclaimants,<br><br>v.<br><br>INSTALLER TECHNOLOGY CO., a Florida corporation, CHRISTOPHER MISERESKY, an individual, and NETNUCLEUS USA, INC., a Florida corporation,<br><br>    Counterdefendants and<br>    Third-Party Defendants. | CASE NO. 1:15-cv-24738-UU |

**COUNTERDEFENDANT'S AND THIRD-PARTY DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Counterdefendant, INSTALLER TECHNOLOGY CO. ("ITC"), and Third-Party Defendants, CHRISTOPHER MISERESKY ("Miseresky") and NETNUCLEUS USA, INC. ("NetNucleus"), by and through undersigned counsel, hereby file this Reply in Support of their

Motion to Dismiss Counterclaim and Third-Party Complaint, and in support thereof state as follows:

## I.    INTRODUCTION

Propeller Ads and Fastlink[1] spend much of their response to the Counterdefendants' motion to dismiss accusing them of "chutzpah". Yet, when one actually reviews the allegations in the Counterclaim [D.E. 45] in conjunction with the motion to dismiss [D.E. 47], the Counterplaintiffs' accusations, one imagines Michele Bachmann's infamous mispronunciation of the word, *see Talk About Chutzpah: Michele Bachmann Tries Yiddish, Fails*, CBS New York (July 14, 2011, 1:38 PM), http://newyork.cbslocal.com/2011/07/14/talk-about-chutzpah-michele-bachmann-tries-yiddish-fails/, not a serious argument. Likewise, the Counterplaintiffs' *kvetching* about ITC's First Amended Complaint [D.E. 8] misses substantial differences between the two complaints and serves only to distract this Court from the pertinent issues.

By way of background, this case involves a scam perpetrated by the Defendants/Counterplaintiffs. Propeller Ads is an ad network that contracts with various companies to show ads for their products across the Internet. Under the contract between Counterplaintiffs and Counterdefendants, Counterplaintiffs were paid variably based on the number of advertisement views, clicks, or software downloads. The temptation for fraud is obvious—Propeller Ads had an incentive to artificially inflate network traffic in order to boost

---

[1] For ease of reference with respect to the counterclaim/third-party complaint, Propeller Ads and Fastlink will be referred to collectively as the "Counterplaintiffs" and ITC, Miseresky, and NetNucleus will be referred to collectively as the "Counterdefendants". Likewise, the Amended Counterclaim/Third-party complaint will be referred to simply as the Counterclaim.

their own bottom line. That is exactly what occurred.[2] Propeller Ads then had the *chutzpah* to demand payment for the fraudulent bills.

## II.     MEMORANDUM OF LAW

### A.     The Counterclaim Is a Shotgun Pleading Requiring Dismissal.

"Propeller [and Fastlink] repeat[s], re-allege[s] and incorporate[s] each and every allegation of the proceeding paragraphs as if set forth herein." *See* Am. Countercl. ¶¶ 49, 55, 59, 64, 69. Compare this to the allegations in the Amended Complaint: "Plaintiff hereby incorporates by references and restates paragraphs 1-53 as if fully stated herein." *See* Am. Compl. ¶¶ 54, 59, 65, 71, 75, 81. The difference between the two is obvious.[3] In its Amended Complaint, ITC incorporates a select universe of organized facts to support each of its claims for relief. *See Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1306 (S.D. Fla. 2013) (holding that there is no shotgun pleading where the individual counts incorporate only the initial pre-count paragraphs). On the other hand, the Counterplaintiffs incorporate each of the preceding counts into the next. This is the textbook definition of a shotgun pleading. *Millennium Labs., Inc. v. Aegis Scis. Corp.*, Nos. 11-20451-CV-JLK, 11-22815-CV-JLK, 2011 WL 4007862, at *1 (S.D. Fla. Sept. 8, 2011) (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)) ("A shotgun pleading is one in which each count incorporates

---

[2] For additional background on this type of fee arrangement, see generally Daniel L. Hadjinian, *Clicking Away the Competition: The Legal Ramifications of Click Fraud for Companies That Offer Pay Per Click Advertising Services*, 3 Shidler J. L. Com. & Tech. 5 (2006).

[3] Indeed, if Counterplaintiffs *actually* had a problem with responding to the Amended Complaint, they would have filed their own motion to dismiss or a motion for a more definite statement. Instead, they chose to answer. The Counterplaintiffs' arguments that "they did it too" are thus a distraction from their own pleading deficiencies.

- 3 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394 • (954) 377-8100

by reference all of the paragraphs of each preceding count so that it is virtually impossible for the opposing party to respond accordingly.").

The Eleventh Circuit has taken a strong stance against shotgun pleadings and has chastised both courts and litigants for allowing shotgun pleadings to survive into discovery. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125-28 (11th Cir. 2014); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008). Shotgun pleadings imperil the fundamental principles of due process and impede the court's ability to administer justice. *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001); *Barkley v. Davis*, No. 07-61252-CIV, 2007 WL 4557156, at *2 (S.D. Fla. Dec. 21, 2007). The Counterclaim should thus be dismissed until it can be formulated in a way that allows Counterdefendants to properly respond to it.

### B. The Pleadings Against Miseresky and NetNucleus Are Improperly Pleaded.

Without simply rearguing their motion to dismiss, Counterdefendants note that the Counterplaintiffs' claims against Miseresky and NetNucleus are based on theories of successor liability and breaching the corporate veil. Imposing liability for either of those theories require meeting a particular pleading burden, neither of which has been met.

#### *1.   Claims Against NetNucleus*

The basis of Miseresky's and NetNucleus' argument for dismissal is that paragraph 10 of the Counterclaim directly contradicts paragraph 3 of the Counterclaim. Paragraph 3 states that "on December 18, 2015, [ITC] was reinstated," while Paragraph 10 states that "Miseresky…nominally transferred [ITC's] business and those benefits to [NetNucleus], then allowed ITC to be dissolved, all in an attempt to personally take benefit from [Propeller Ads] without being responsible for the liabilities." A company is either active or dissolved, and a reinstated company is an active company.

- 4 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

To the extent Counterplaintiffs are making a claim based on successor liability, that claim too must fail because there is no successor entity—ITC remains active. *See, e.g.*, *Klumpp v. Bandit Indus., Inc.*, 113 F. Supp. 2d 567, 572-73 (W.D.N.Y. 2000) ("Not only does [defendant] continue to exist, the company is named as a defendant in the present action for their alleged role….This is yet another fact disproving plaintiffs' contention that there was a de facto merger[.]"). However, even assuming *arguendo* that NetNucleus is a successor entity, that is not enough to establish successor *liability*. Florida law (under which both ITC and NetNucleus are organized) has long adopted the traditional corporate law rule that the successor entities do not inherit the liabilities of a predecessor unless (1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor. *Bernard v. Kee Mfg. Co., Inc.*, 409 So. 2d 1047, 1049 (Fla. 1982). Counterplaintiffs make no allegation that the first exception applies. The second and third exceptions cannot apply by Counterplaintiffs' own admission—ITC is still an active entity engaging in business. *Klumpp*, 113 F. Supp. 2d at 571 ("If the predecessor corporation continues to exist after the transaction, in however gossamer a form, the mere continuation exception is not applicable."). Thus, Counterplaintiffs' theory appears to be that successor liability should be imposed under the fraudulent transaction exception. However, the Counterclaim does not contain allegations to support this theory.

The fraudulent transaction exception is based on the general rule that a voluntary conveyance by one who is indebted is constructively fraudulent. *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 152 (Fla. 4th DCA 1994). Therefore, transfers made which interfere with existing rights of creditors who have lawful and existing claims are prohibited unless the debtor

- 5 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

was actually insolvent at the time of the transfer. *Id.*; *see also* Uniform Fraudulent Transfer Act § 726.101, *et seq.*, Fla. Stat.

Under UFTA, any transfer made with actual intent to hinder, delay, or defraud creditors is a fraudulent transfer. § 726.105(1)(a). However, as this Court already noted in its first Order dismissing Counterplaintiffs' first Counterclaim [D.E. 41], allegations of fraud are subject to heightened pleading standards under Fed. R. Civ. P. 9(b).[4] With respect to the allegedly fraudulent transfer, the amended Counterclaim makes only a few scant conclusory statements. First, "Miseresky…nominally transferred [ITC's] business and those benefits to [NetNucleus], then allowed ITC to be <u>dissolved</u>, all in an attempt to personally take benefit from [Propeller Ads] without being responsible for the liabilities." Am. Compl. ¶ 10. Second, "On information and belief, [NetNucleus] is ITC's successor and was created in an attempt to hinder or delay ITC's creditors, including [Propeller Ads] and Fastlink." Am. Compl. ¶ 43. And third, "[G]iven that [NetNucleus] was making payments on behalf of TIC, that ITC was dissolved and that Mr. Miseresky is the only listed officer/director of both [NetNucleus] and ITC, [NetNucleus] is the successor business to ITC and is responsible for ITC's liabilities, as is Mr. Miseresky personally." Am. Compl. ¶ 45. These mere conclusory allegations are not sufficient to allege *any*

---

[4] Although there is some case law in the Southern District of Florida that holds that UFTA claims are not subject to Rule 9(b)'s heightened pleading requirements, *see*, *e.g.*, *Steinberg v. Barclay's Nominees (Branches) Ltd.*, No. 04-60897-CIV, 2008 WL 4601043, at *12 (S.D. Fla. Sept. 30, 2008), there is no controlling case law on point. On the other hand, the majority rule is that, at the very least, allegations of actual (as opposed to constructive) fraud in UFTA cases are subject to Rule 9(b)'s strictures. *See Air Cargo, Inc. Litig. Trust v. i2 Techs., Inc.* (*In re Air Cargo, Inc.*), 401 B.R. 178, 192 n.7 (Bankr. D. Md. 2008); *see also* 37 Am. Jur. 2d *Fraudulent Conveyances and Transfers* § 170 (2016) ("There is authority to the effect that fraudulent conveyance claims must be alleged with particularity."). Indeed, Florida state law requires that fraudulent transfer claims must be alleged with particularity. *See Reina v. Gingerale Corp.*, 472 So. 2d 530, 531-32 (Fla. 3d DCA 1985).

- 6 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

fraud, much less actual fraud, with particularity, such that successor liability would be triggered. Thus, the Counterclaim should be dismissed against NetNucleus as improperly pleaded.

### 2. Claims Against Miseresky Personally

Under Florida law, courts are permitted to disregard the corporate form and pierce the corporate veil only in the most extraordinary circumstances. *PaeTec Commc'ns, Inc. v. Bull* (*In re Bull*), 528 B.R. 473, 488 (M.D. Fla. 2015). To pierce the corporate veil as against a shareholder, a plaintiff must prove that (1) the shareholder dominated and controlled the corporation to such an extent that the corporation to such an extent that the corporation's independent existence was in fact non-existence and the shareholder was an alter ego of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330 1349 (11th Cir. 2011). Even if a corporation is merely an alter ego of its dominant shareholder, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). When a contract is between two corporate entities, the law is clear the corporations' principals are not personally liable. *Id.*

As this Court noted in its first dismissal order [D.E. 41, at 9], in which it warned that "the Court is skeptical that Counter-Plaintiffs will be able to assert legally cognizable claims against Miseresky in his individual capacity for purposes of piercing the corporate veil", the allegations against Miseresky are that he acted on behalf of his companies and for the benefit of his companies. These actions do not support piercing the corporate veil.

Counterplaintiffs' attempt to correct this deficiency has failed. Its allegations giving rise to a claim for piercing the corporate veil are mere recitations of the elements interspersed with

- 7 -

Fowler White Burnett P.A. • One Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394• (954) 377-8100

vague accusations unsupported by facts. Am. Compl. ¶¶ 6-13. There is no allegation (other than the mere legal conclusion offered by Counterplaintiffs) that Miseresky "dominated and controlled" either ITC or NetNucleus to such an extent that their independent existences were nonexistent. There is no allegation that the corporate form itself was used fraudulently or for an improper purpose. Counterplaintiffs do not argue (nor can they) that the assets at issue are "gone" or were otherwise transferred to Miseresky—they argue that the assets were improperly transferred to NetNucleus, who is of course a defendant in this lawsuit. Thus the Counterplaintiffs cannot argue more than the vague barebones allegation that Miseresky's conduct caused an alleged injury.

      C.      **Fastlink Does Not Have Standing to Sue.**

Counterplaintiffs successfully argue against a straw man in challenging Counterdefendants' motion to dismiss. Unfortunately, in doing so, they miss the point. Counterdefendants do not contend that "Fastlink is entirely irrelevant to the present litigation." Fastlink is plainly relevant—else Counterdefendants would not have sued them in the first place. Fastlink asserts four causes of action against the Counterdefendants: Unjust enrichment (Count III); quantum meruit (Count V); fraud/intentional misrepresentation; (Count VI) and violation of the Florida Deceptive and Unfair Trade Practices Act (Count VII).

Although they are similar causes of action, unjust enrichment and quantum meruit are not the same and are often confused. *See Adventist Heath Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, No. 6:03-cv-1121-Orl-19KRS, 2004 WL 6225293, at *3-4 (M.D. Fla. Mar. 8, 2004). To recover under quantum meruit, a plaintiff must disavow the existence of an express contract and allege that the recipient (1) acquiesced in the provision of services; (2) was aware that the provider expected to be compensated; and (3) was unjustly enriched thereby. *Hermanowsky ex rel.*

- 8 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

*Americable Assocs. v. Naranja Lakes Condo. No. Five, Inc.*, 421 So. 2d 558, 561 (Fla. 3d DCA 1982). On the other hand, as an action in equity, to recover under an unjust enrichment theory, the following elements must be alleged: (1) lack of an adequate remedy at law; (2) a benefit conferred upon the defendant by the plaintiff coupled with the defendant's appreciation of the benefit (i.e., an enrichment); (3) acceptance and retention of the benefit under circumstances that make it inequitable for him or her to do so without paying the value for it. (i.e., an injustice). *Challenge Air Transp., Inc. v. Transportes Aereos Nacionales, S.A.*, 520 So. 2d 323, 324 (Fla. 3d DCA 1988).

Counterplaintiffs have not put forward facts that would establish that Fastlink is entitled to either form of relief. There is no allegation in the Counterclaim that Fastlink provided anything to any Counterdefendant. To the extent Fastlink provided *any* service, it was to Propeller Ads. Likewise, there is no allegation that Fastlink provided any benefit to any Counterdefendant. Indeed, even in Counterplaintiffs' response to the motion to dismiss, they do not state what Fastlink's role in the transaction was. Nor can they, as Fastlink was indeed a billing company (a sham billing company, as Counterdefendants allege in their Amended Complaint, but a billing company nonetheless). Thus, the claims for both unjust enrichment and quantum meruit must fail.

A similar pitfall exists with Fastlink's claim for fraud/intentional misrepresentation. The elements of fraudulent misrepresentation are (1) a false statement or misrepresentation of a material fact; (2) the representor's knowledge at the time that the statement is false; (3) such misrepresentation was intended to induce another to act in reliance thereon; and (4) action in justifiable reliance on the representation; and (5) resulting damage or injury to the party so acting. *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994).

- 9 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Case 1:15-cv-24738-UU   Document 52   Entered on FLSD Docket 07/01/2016   Page 10 of 12

CASE NO. 1:15-cv-24738-UU

Fastlink has made no allegation as to any *action* it took in reliance on any statement allegedly made by any Counterdefendant. Nor could it—it was just a billing company in a transaction between ITC and Propeller Ads.

Finally, to plead a FDUTPA claim, a plaintiff must plead (1) a deceptive claim or unfair practice; (2) causation; and (3) actual damages. *CareerFairs.com v. United Bus. Media LLC*, 838 F. Supp. 2d 1316, 1324 (S.D. Fla. 2011). Again, Fastlink has made no more than conclusory allegations as to how any Counterdefendant damaged *it* (as opposed to Propeller Ads). And, of course, as this Court noted in its first Order dismissing the Counterclaim, the Counterplaintiffs have entirely failed to plead actual damages under FDUTPA. [D.E. 41, at 8]. *See also QSGI, Inc. v. IBM Global Fin.*, No. 11-80880-CIV, 2012 WL 1150402, at *4-5 (S.D. Fla. Mar. 14, 2012). The FDUTPA claim must therefore be dismissed as well.

### III.     CONCLUSION

Counterplaintiffs' Amended Counterclaim is replete with contradictions and conclusory allegations that render it either legally insufficient or otherwise impossible for Counterdefendants to properly respond to. The Amended Counterclaim should be dismissed. Furthermore, because this Court has already given the Propeller Ads and Fastlink an opportunity to state a plausible claim for piercing the veil against Miseresky and has indicated its skepticism that they would be able to do so, the Counterplaintiffs' claim against Miseresky should be dismissed with prejudice.

WHEREFORE, Counterdefendants respectfully request that this Honorable Court enter an order granting its Motion to Dismiss [D.E. 47] as well as grant any such further relief that the Court deems just and appropriate under the circumstances.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. 1:15-cv-24738-UU

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2016, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Avery A. Dial
Avery A. Dial

Respectfully submitted,

/s/ Avery A. Dial
Avery A. Dial
Fla. Bar No. 732036
Email: adial@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:	(954) 377-8100
Facsimile:	(954) 377-8101

- 11 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. 1:15-cv-24738-UU

- 12 -

## SERVICE LIST

CASE NO. 1:15-cv-24738

Brady J. Cobb, Esq.
Cobb Eddy, PLLC
642 NE Third Avenue
Ft. Lauderdale, FL 33304
E-Mail: bcobb@cobbeddy.com
Telephone: (954) 527-4111
Facsimile: (954) 900-5507

***Attorney for FASTLINK and PROPELLER ADS***

4837-4481-2084, v. 1